[Crim. No. 22176. First Dist., Div. One. Sept. 1, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
LESA DAUGHERTY, Defendant and Appellant.

---

---

**COUNSEL**

S. Clay Bedford, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**ELKINGTON, J.**—By her instant appeal defendant Lesa Daugherty seeks "specific enforcement" of a plea bargain claimed to have been breached by the Santa Clara County District Attorney.

Santa Clara County has separate municipal court facilities in Palo Alto and San Jose. Defendant was charged by complaint with, and was awaiting preliminary examination in the Palo Alto facility on, a charge of grand theft. Upon her arraignment on that charge a plea bargain was announced by her attorney, a deputy public defender, and the deputy district attorney attending that facility of the municipal court. It was memorialized as follows:

"The Court: It's my understanding, gentlemen, that a disposition has been effected in this matter. I'll attempt to recite the disposition as I understand it for the record. My understanding is the defendant will enter a plea of guilty as charged to the offense on file in this court. Namely, a violation of grand theft, a felony. The maximum penalty

could be three years in the state prison. There are no conditions on that plea on behalf of the defendant. However, *there is a promise on the part of the People, if I understand it correctly, that no other similar charges known to exist in the County of Santa Clara as of today's date, April 3, 1980, would be filed by the People if they have not been filed yet. Or, if they have already been filed, they would be dismissed no matter which court they are in, whether it be the municipal or superior court, as of today's date* or following in return for the plea of guilty to the charge of grand theft now before this court. Does that correctly recite the disposition? Mr. Beizer [Deputy District Attorney]: *That correctly recites it from our point of view,* your Honor. Yes. Mr. Sullivan [Deputy Public Defender]: Your Honor, *that largely conforms with my understanding.* I think I would have worded it that this is indeed a condition of the plea and not a mere promise. Although the district attorney's office, I know, is good for its promise. The Court: *If the People attempted to pursue other matters of a similar nature, the defendant would be allowed to withdraw this plea.* Mr. Sullivan: *That would be my understanding. Furthermore,* that we would—*the parameter of those matters* of hers *which would be dismissed or not filed would be not only those now known to the district attorney's office but any that might become known to the district attorney's office that happened prior to April 3, 1980.* The Court: *That's correct.* Mr. Sullivan: *So not only those on file and those they're aware of that have not been filed, but any others that may come to light that may have occurred prior to today's date, April 3, 1980.* The Court: That's my understanding, also. Mr. Beizer: *Of a similar nature,* your Honor. Mr. Sullivan: *Similar nature.* The Court: Other than that there are no conditions and promises as to sentencing; is that correct? Mr. Sullivan: That's correct. The Court: Is that your understanding? Mr. Beizer: Yes, it is." (Italics added.)

The parties disagree as to the interpretation of the foregoing proceedings. The Attorney General argues that the People were thereby permitted to repudiate the plea bargain at will, leaving defendant with only the option of withdrawing her guilty plea. She, on the other hand, insists that the prosecutor was bound in good faith to seek dismissal of all similar charges of grand theft occurring in the county prior to April 3, 1980, the day of the plea bargain.

■ We consider the plea bargain.

Although not artfully stated, a close reading and analysis of it reveals the prosecutor's promise that other similar Santa Clara County charges

of grand theft, *perpetrated before April 3, 1980*, whether known or unknown, *would either not be filed, or if already filed, would be dismissed.** Upon noncompliance with this promise defendant's remedy was *not* restricted to the setting aside of her guilty plea. Only "If the People attempted to pursue *other matters of a similar nature*," occurring *on or after April 3, 1980*, was provision made that defendant "be allowed to withdraw [her guilty] plea." As will soon be seen, the "other matters of a similar nature" of our present concern occurred *before April 3, 1980.*

■ We observe no substantial ambiguity in respect of the plea bargain. Were we, arguendo, to discern such an ambiguity we would be obliged to resolve it in favor of defendant, under the well-known rule that: "The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, *or as to the true interpretation of words* or the construction of language used in a statute." (*In re Tartar* (1959) 52 Cal.2d 250, 257 [339 P.2d 553]; italics added.)

At the time of the Palo Alto Municipal Court plea bargain three similar charges of grand theft, which had been perpetrated *before* April 3, 1980, were pending in the San Jose facility of the Santa Clara County Municipal Court.

Following defendant's plea of guilty to the Palo Alto charge, the matter was certified to the superior court for further proceedings on the plea.

Four days later the three San Jose charges of grand theft against defendant came on for preliminary examination. A different deputy district attorney there announced that he intended to proceed with those charges despite the Palo Alto plea bargain which he deemed "unwise." Defendant was held to answer on the charges.

A few days thereafter defendant was arraigned for sentence in the superior court on the Palo Alto guilty plea. She, consistent with the plea bargain, was sentenced to the maximum penalty of three years in state prison.

---

*We treat this as a promise that the prosecutor would in good faith seek such dismissals. As is well known, the actual power to dismiss rests exclusively with the court (*People v. Johnson* (1966) 247 Cal.App.2d 331, 333 [55 Cal.Rptr. 450]); the parties are not here in disagreement.

Thereafter, at or following defendant's arraignment in the superior court on the three San Jose charges, the public defender, seeking "specific enforcement" of the Palo Alto plea bargain, moved for their dismissal. The motion was vigorously opposed by the prosecutor for the stated reason: "Basically, we did not feel that the bargain reached by Mr. Beiser [*sic*] was a wise one under the circumstances." Finding it significant that soon after the Palo Alto guilty plea, defendant had been notified by the San Jose prosecutor of its repudiation, the superior court concluded that although the plea bargain had been "breached," defendant had somehow waived the breach by "accepting" the sentence she and the prosecutor had bargained for. Her motion for dismissal of the San Jose charges was denied.

In the ensuing superior court proceedings on the three San Jose charges she was convicted of two of them and the third was dismissed. On each of the two convictions she was sentenced to middle state prison terms of two years, the sentences to run consecutively with each other and with the sentence on the Palo Alto guilty plea. The additional sentencing would have added a year and four months to that imposed upon the Palo Alto guilty plea.

The appeal is from the judgment entered on the San Jose grand theft convictions.

Following California's Supreme Court's decision of *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409], finding no constitutional or other flaw in the practice of "plea bargaining" in criminal cases, the Legislature enacted Penal Code section 1192.5.

Section 1192.5 generally and as here pertinent provides that upon a plea of guilty to a felony, "the plea may specify the punishment to the same extent as it may be ... fixed by the court," upon a conviction of such an offense on a plea of not guilty. The bargained for plea must have been accepted by the prosecutor, and may be approved, or disapproved, by the court. The court's initial approval is not binding and may be withdrawn "in the light of further consideration of the matter," and if judicial approval is so withdrawn "the defendant shall be permitted to withdraw his plea if he desires to do so." And where "such plea is accepted by the prosecuting attorney in open court" and stands approved by the court, the defendant "cannot be sentenced on such plea to a punishment more severe than that specified in the plea...."

■ Decisional law has since pointed out that where the district attorney or his deputy prosecutor has, on the record, accepted such a plea bargain and it has finally been approved by the court, both the prosecution and the defendant are entitled to the benefits for which they have bargained. (*People* v. *Collins* (1978) 21 Cal.3d 208, 214 [145 Cal.Rptr. 686, 577 P.2d 1026].) The bargainers "'must conduct themselves openly and with the utmost fairness,'" and it is well "'established . . . that the People will be held strictly to the terms of a plea bargain made with a criminally accused.'" (*People* v. *Caron* (1981) 115 Cal.App.3d 236, 246 [171 Cal.Rptr. 203].)

Two points bear emphasis. We find nothing in Penal Code section 1192.5 or in related decisional law which permits the prosecutor, absent defendant's fraud or deception, or other valid reason, to repudiate a plea bargain previously accepted by him. Such a repudiation would manifestly defeat the principle that both the prosecutor and the defendant are entitled to the benefit of the bargain they have struck. (See *People* v. *Collins, supra*, 21 Cal.3d 208, 213-217.) After the bargain has been reached, it is the trial court alone which may reject or disapprove it. (Pen. Code, § 1192.5; *People* v. *Morris* (1979) 97 Cal.App.3d 358, 363 [158 Cal.Rptr. 722], "Whether the proffered plea was acceptable was within the exclusive discretion of the court"; see also *People* v. *Superior Court* (*Smith*) (1978) 82 Cal.App.3d 909, 914 [147 Cal.Rptr. 554].) And even after such judicial approval, "the court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea." (*People* v. *Johnson* (1974) 10 Cal.3d 868, 873 [112 Cal.Rptr. 556, 519 P.2d 604]; and see *In re Eads* (1980) 102 Cal.App.3d 499, 503 [162 Cal.Rptr. 411]; *People* v. *Morris, supra*, 97 Cal.App.3d at p. 363.)

The rule that has developed in California has high federal support. "A court may reject a plea [bargain] in exercise of sound judicial discretion [but subject thereto] when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello* v. *New York* 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495]; and see *People* v. *Calloway* (1981) 29 Cal.3d 666, 673 [175 Cal.Rptr. 596, 631 P.2d 30].)

■ The question arises as to the nature of the relief to which defendant becomes entitled. Under decisional law to which we have adverted she should have the benefit of her bargain. But, as argued by the Attor-

ney General, it has also been said: "Where the prosecution repudiates its part of the plea bargain, the defendant's remedy is to move to withdraw his plea of guilty in the trial court." (*People* v. *Barajas* (1972) 26 Cal.App.3d 932, 937 [103 Cal.Rptr. 405].) However, another case of our high court, *People* v. *Kaanehe* (1977) 19 Cal.3d 1 [136 Cal.Rptr. 409, 559 P.2d 1028], quite clearly indicates that such remedy is *not* the only, or necessarily the proper, remedy for a legally unexcused breach of the prosecutorial promise of a plea bargain.

*Kaanehe* sanctions the use, in a proper case, of the remedy of *specific enforcement* of a plea bargain. But the remedy must be used with restraint where it purports to contravene the above mentioned power of the trial court to reject or disapprove. "Specific enforcement of a particular agreed-upon disposition must be strictly limited because it is not intended that a defendant and prosecutor be able to bind a trial court which is required to weigh the presentence report and exercise its customary sentencing discretion." (19 Cal.3d, p. 14.) The court accordingly drew a distinction between a remedy which would tend to abridge that judicial power, and one which would not, saying: "The remedy differs depending upon the nature of the breach and which party is seeking specific enforcement. When the breach is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain. When the breach is a refusal by the court to sentence in accord with the agreed-upon recommmendation, specific enforcement would entail an order directing the judge to resentence the defendant in accord with the agreement." (*Idem.*, p. 13.)

More recently the high court in *People* v. *Calloway, supra*, 29 Cal.3d 666, *passim*, reaffirmed the rule that a plea bargain will ordinarily be enforced as between a defendant and the prosecutor but, "absent very special circumstances," *not* "against the trial court" which remains free, even after initial approval, to finally reject it.

We discern no purpose of the high court to discourage specific enforcement of a plea bargain *as between the defendant and prosecutor*, where the power of the court to reject the bargain is not curtailed. In such a case, absent reasonable cause therefor, neither of the parties should, as we have by now repetitively pointed out, be deprived "of the bargain to which he remains entitled." (*People* v. *Collins, supra*, 21 Cal.3d 208, 216.)

Nor are we persuaded by the superior court's rationale that defendant had "waived" the prosecutor's breach by "accepting" without protest the sentence on the Palo Alto charge as assured her by the plea bargain.

It appears that in erroneously finding defendant's "waiver," the superior court did not itself consider whether the interest of society and justice called for judicial approval, or disapproval, of the subject plea bargain.

The cause will accordingly be remanded for reconsideration of defendant's motion for specific enforcement of the plea bargain. Upon such remand, quoting from *Kaanehe*: "Further proceedings should, of course, be had before a judge other than the judge who presided over the instant proceedings. We do not deem it likely that any judge, however objective and disciplined he may be, can wholly remove from consideration in [passing upon the motion] the matters improperly communicated to him by the prosecutor." (See 19 Cal.3d, p. 15.)

We recognize the narrow and difficult line which must be trod by the prosecutor upon the renewed proceedings. He, or the public defender, may of course invite the court's attention to the plea bargain. And he will be permitted, at the court's request, to furnish any desired relevant information about the case. But in good faith he will refrain from impugning the plea bargain or otherwise reengaging in such advocacy as appears in the record of the hearing on defendant's motion to dismiss.

The judgment is reversed, and the cause is remanded to the superior court for reconsideration of defendant's motion to dismiss the San Jose proceedings in a manner consistent with this opinion. If the court shall rule against defendant on her motion, she will be resentenced on the present record; however, in such event she may elect, by habeas corpus or other proper proceedings, to seek withdrawal of her Palo Alto plea of guilty to grand theft.

Racanelli, P. J., and Newsom, J., concurred.